**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACKELINE SERRANO, | CASE NO. 5:11-cv-06378 EJD |
| Plaintiff(s), | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | [Docket Item No(s). 13, 16] |
| Defendant(s). | |

Plaintiff Jackeline Serrano ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the Social Security Administration's (the "Administration") final decision denying her claim for Supplemental Security Income ("SSI"). Specifically, Plaintiff's Motion for Summary Judgment seeks an order reversing the final decision of the Administration and awarding benefits, or alternatively, remanding the action to the administrative law judge ("ALJ") with instructions to conduct further proceedings. See Docket Item No. 13. Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Defendant"), opposes Plaintiff's motion and seeks summary judgment affirming the decision of the ALJ. See Docket Item No. 16.

Having considered the relevant pleadings along with the administrative record, the court has determined that the ALJ's decision should be affirmed. Plaintiff's Motion for Summary Judgment will therefore be denied and Defendant's cross-motion will be granted.

1

CASE NO. 5:11-cv-06378 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. BACKGROUND

### A. Procedural History

On May 14, 2010, Plaintiff applied for Supplemental Security Income Benefits ("SSI"), alleging a disability which began on May 13, 2010. See Administrative Transcript ("Tr."), at 21; 161. Plaintiff's claim was initially denied by the Administration on September 17, 2010. Id. at 130-34. Plaintiff then requested reconsideration of that decision, which was also denied by the Administration on December 22, 2010. Id. at 136-141.

Plaintiff subsequently requested a hearing before an ALJ, which occurred before ALJ Betty Roberts Barbeito on June 22, 2011. Id. at 41, 146. Plaintiff, represented by counsel, testified on her own behalf. Id. at 21-35. The ALJ also heard testimony from Plaintiff's husband and from a vocational expert. Id. In a written decision dated July 21, 2011, the ALJ ultimately found, after recounting the medical evidence and testimony, that Plaintiff was not disabled and had the residual functional capacity to perform "light work".[1] Id.

Plaintiff sought administrative review of the ALJ's determination. Id. at 15-16. On October 24, 2011, the Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Administration. Id. at 1-6.

Plaintiff filed the instant action requesting judicial review of the Administration's decision on December 16, 2011. See Compl., Docket Item No. 1. This summary judgment motion followed on May 3, 2012. See Docket Item No. 13. The cross-motion was filed on June 13, 2012. See Docket Item No. 16.

### B. Plaintiff's Personal, Vocational and Medical History

Plaintiff was born on April 2, 1982, and attended school to the ninth grade. See Tr., at 63,

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing ad pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.967.

2
CASE NO. 5:11-cv-06378 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

66. Plaintiff testified that she cannot read or write in English. Id. at 66. She is married and has three children, who were nine-years old, six-years old and two-years old at time of the hearing before the ALJ. Id. She has never been employed. Id. at 74.

Plaintiff claims an inability to work based on a low level of adaptive functioning due to a learning disability and depression. Id. at 68-70. She was administered a full-scale IQ test through Santa Clara County's "Keys to Success" Program in or about February, 2010, which placed Plaintiff's overall IQ at 61 and within the "extremely low range." Id. at 167-174. On March 16, 2010, a special education evaluator from Evergreen Community College determined that Plaintiff "meets the eligibility criteria of the Developmentally Delayed Learning definition." Id. at 298.

As to her mental condition, Plaintiff attended a comprehensive psychiatric evaluation with Dr. Maria Antoinette Acenas on May 14, 2010. Id. at 301-302. Dr. Acenas diagnosed Plaintiff with a learning disability but not depression. Id. Dr. Acenas determined that Plaintiff was incapable of managing funds due to a lack of mathematical skills, but could "perform simple and repetitive tasks as well as accept instructions from supervisors." Id. Dr. Acenas further determined that Plaintiff's mental capabilities would allow her to "to perform work activities on a consistent basis, maintain regular attendance in the workplace and complete a normal workweek." Id. Finally, Dr. Acenas determined that Plaintiff "would be able to deal with the ususal stress encountered in a competitive environment." Id.

Plaintiff then underwent a complete psychological evaluation with Dr. Janine Marinos on August 19, 2010. Id. at 328-30. Plaintiff informed Dr. Marinos that "she is able to bathe and dress herself, drive, take public transportation, and do light housekeeping, laundry, shopping and meal preparation." Id. at 328. Dr. Marinos noted that Plaintiff "manages her own finances (AFDC)." Id. After meeting with Plaintiff, Dr. Marinos indicated that she "did extremely poorly on all tasks of cognitive function." Id. at 329. Of note is this portion of Dr. Marinos' wrote report:

> For example, when asked the year, she replied "9." On further questioning, she stated that is was "March 9." She was again asked the year and replied "2." When asked if it was "year 2," she again stated "2." She repeated a maximum of only two digits forwards, missing one of the two trials. She failed to repeat 3/3 words after four trials. When asked how much 2 + 1 equals, she smiled and she said

> she did not know. She was then asked how much 1 + 1 equals; after about 10 seconds, she stated, "I should know that one" and said "3." She failed to recite the days of the week and missed two numbers in counting from 1 to 10 .

Id. at 329 (emphasis in original).

Dr. Marinos diagnosed Plaintiff with malingering, observing in conclusion that "[a]lthough the claimant may be of below-average intelligence, with weak academic achievement, it is extremely doubtful that she is as impaired as she presented herself on testing," because "her extremely poor performance is at odds with her reported level of adaptive functioning." Id. at 329-30. Dr. Marinos also opined that Plaintiff could understand, remember and carry out simple instructions, maintain concentration and pace for routine tasks, interact appropriately with others, and deal with changes in a routine work setting. Id. at 330. Dr. Marinos also found it "likely" that Plaintiff could handle simple monetary transactions. Id.

Plaintiff was administered a Mental Residual Functional Capacity Assessment by Dr. H. Amado on September 10, 2010. Id. at 331-48. Dr. Amado determined that Plaintiff had a learning disorder, but did not diagnose Plaintiff with depression or mental retardation because the evidence was insufficient to substantiate either disorder. Id. Dr. Amado also determined that the learning disability imposed a moderate restriction on Plaintiff's activities of daily living, a mild difficulty on her social functioning, and a moderate difficulty on her concentration, persistence or pace. Id. Dr. Amado found no evidence of repeated episodes of decompensation. Id. Dr. Amado ultimately concluded that Plaintiff's allegations were "partially supported," but that she did not make a good efforts during the assessment. Id. Dr. Amado also commented on Plaintiff's "consistently poor performance" and "seemingly willful dramatization of cognitive impairments," which is "not inconsistent with the retained ability to perform simple work tasks on a sustained basis." Id.

Finally, Plaintiff attended a psychiatric assessment with Dr. Ronald Diebel on March 14, 2011. Id. at 353-54. Dr. Diebel diagnosed Plaintiff with major depression and post-traumatic stress disorder. Id. He prescribed Remeron for Plaintiff, which he opined would provide Plaintiff "some sleep and improve her concentration and ability to process data that is secondary to her major

depression." Id. Dr. Diebel concluded that Plaintiff's "mental status precludes full or part time paid employment." Id. He also did not foresee malingering. Id.

At that hearing before the ALJ, Plaintiff testified that she has a valid drivers' license but does not drive because she is scared and cannot read. Id. at 65, 119. Her husband is with her most times, both inside and outside the home. Id. at 71, 83. He is able to drive her on errands, assists her with child care, and prepares meals. Id. at 84. Plaintiff also receives assistance from her sister in law. Id. at 73-74. However, Plaintiff stated that she can follow simple cooking instructions if they are read and explained to her and can provide care for her children, which includes changing diapers, feeding and retrieving them from school. Id. at 72, 77-78, 105. She was previously paid to babysit her brother. Id. at 74. Plaintiff also socializes with neighbors. Id. at 78.

## II. DISCUSSION

### A. Standard for Reviewing the ALJ's Decision

Pursuant to 42 U.S.C. § 405(g), the district court has authority to review an ALJ decision. The court's jurisdiction, however, is limited to determining whether the denial of benefits is supported by substantial evidence in the administrative record. Id. A district court may only reverse the decision if it is not supported by substantial evidence or if the decision was based on legal error. Id.; accord Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

"Substantial evidence" is more than a scintilla, but less than a preponderance. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). This standard requires relevant evidence that a "[r]easonable mind might accept as adequate to support a conclusion." Vertigan, 260 F.3d at 1049 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). The court must affirm the ALJ's conclusion so long as it is one of several rational interpretations of the evidence. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

### B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given the claimant's age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

"The claimant carries the initial burden of proving a disability." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). If the claimant proves a prima facie case of disability, then the Commissioner has the burden of establishing that she can perform "a significant number of other jobs in the national economy." Thomas, 278 F.3d at 955. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Id.

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. § 416.920. The steps require the following analysis:

(1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

(2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

(3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments. 20 C.F.R. § 416.920(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

(4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. § 416.920(e). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 416.920(f).

(5) In this step, the Commissioner has the burden of demonstrating that the claimant is not

disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. § 416.920(g).

**C. Application**

The ALJ made the following findings and conclusions on the five steps: (1) for step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 14, 2010; (2) for step two, the ALJ determined Plaintiff has learning delay, mild depression/anxiety, untreated back pain by history and malingering, the combination of which would result in more than a mild limitation in functioning; (3) for step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the requirements of the Listing of Impairments; (4) for step four, the ALJ determined that Plaintiff does not have the residual functional capacity to perform the full range of light work; and (5) for step five, the ALJ determined that there are jobs that exist in the national economy that Plaintiff can perform based on the testimony of a vocational expert. See Tr. at 21-35.

In her motion, Plaintiff takes issue with the ALJ's determination at steps three and four of the analysis. She argues: (1) the ALJ's findings do not support a finding of non-disability but rather meet the requirements of § 12.05 of Listing of Impairments; (2) the ALJ improperly rejected Dr. Diebel's report and opinion that Plaintiff suffers from depression; and (3) the ALJ's credibility determination is not supported by substantial evidence. The court addresses each of Plaintiff's arguments in turn.

**1. The ALJ properly interpreted the medical evidence**

Plaintiff argues the findings stated in the decision support a finding of mental retardation under § 12.05 of the Listing of Impairments. Specifically, Plaintiff contends her impairments meet the definition listed in subsection C of § 12.05. See 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05C ("A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.").

In response, Defendant appears to argue the ALJ was not required to apply § 12.05 because

7
CASE NO. 5:11-cv-06378 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

the medical evidence did not contain a diagnosis of mental retardation. Id. ("Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."). It is generally true that an ALJ is not required to account for the effects of a medical impairment not raised by the claimant because it is the claimant's burden to prove entitlement to benefits. Baptista v. Astrue, No. CV 07-3053-MO, 2008 U.S. Dist. LEXIS 101407, at *21 (D. Or. Dec. 2, 2008). But here, the record before the ALJ contained sufficient information to at least raise the issue. See Tr. at 31 ("The claimant's representative noted at the hearing the claimant's case is based on the claimants low IQ, extremely poor adaptive functioning, and her depression for the last nine months."), 281-227. Moreover, "a formal diagnosis of mental retardation is not required to fall within the confines of section 12.05." Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007) ("[A] formal diagnosis of mental retardation is not required to fall within the confines of section 12.05"); Lewis v. Astrue, No. C 06-6608 SI, 2008 U.S. Dist. LEXIS 6108, at *16, 2008 WL 191415 (N.D. Cal. Jan. 22, 2008) ("[A]ll that is required to meet the definition of mental retardation - aside from the onset requirement - is an IQ score between 60 and 70 and another physical or mental impairment that imposes a significant work-related limitation of function."). Accordingly, it was appropriate for the ALJ to assess Plaintiff's impairment under § 12.05 even in the absence of an actual diagnosis.

Turning to the findings, the ALJ determined that Plaintiff's full scale IQ score of 61 satisfied the first requirement of subsection C. See Tr. at 26. The ALJ then went on to find, however, that Plaintiff did not suffer from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. In support, the ALJ noted Plaintiff did not present "any evidence that she has any significant physical impairments," found substantial the conclusions of Dr. Acenas and Dr. Marinos that Plaintiff's mental condition did not prevent her from performing simple and repetitive work, and rejected Dr. Diebel's diagnosis of major depression and post-traumatic stress disorder. Id. at 26-27. Since the court will determine below that the ALJ validly rejected Dr. Diebel's report, it will also determine that the findings and conclusion of non-

disability under §12.05C are supported by substantial evidence.

Plaintiff contends that the second requirement of § 12.05C was met because the ALJ found Plaintiff "would have no more that a moderate limitation in concentration, persistence, or pace." Id. at 25. Without explicitly stating as much, Plaintiff argues that a finding of moderate limitation in maintaining concentration, persistence, or pace could support the presence of a severe mental impairment. It certainly could. See 20 C.F.R. § 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."). But such a finding, assuming one was actually made here,[2] does not equate to an award of benefits; it only requires the ALJ to assess the applicant's residual functional capacity under step four. See 20 C.F.R. § 416.920a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity."). The ALJ did so and found, based on the medical evidence and Plaintiff's testimony, that Plaintiff could perform the full range of light work. See Tr. at 27-34. The court, therefore, finds no error in the ALJ's interpretation of the medical evidence and application of the Listing of Impairments.

**2.    The ALJ properly rejected Dr. Diebel's opinion and report**

In the context of Social Security determinations, the weight prescribed to medical opinions depends in part on whether they are offered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. For this reason, an ALJ may reject an uncontradicted

---

[2] The wording employed by ALJ - that Plaintiff's impairments "would have no more than a moderate limitation" - is not a model of clarity. Indeed, as written, it is unclear exactly what level of severity the ALJ meant to prescribe to Plaintiff's impairment. Based on the regulations, it could be none or mild or moderate. See 20 C.F.R. § 416.920a(c)(4) ("When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme."). For obvious reasons, more definitive findings are preferable to those, like this one, that leave issues open to speculation.

opinion of a treating or examining medical professional only for "clear and convincing" reasons. Id. at 831. In addition, an ALJ can reject a treating physician's opinion in favor of other conflicting medical opinions so long as the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Thomas, 278 F.3d at 956-57.

The ALJ rejected Dr. Diebel's report and opinion as "overly restrictive and unsupported by substantial evidence" for numerous reasons. See Tr. at 26. First, the ALJ explained that Dr. Diebel's diagnoses of major depression and post-traumatic stress disorder were based largely on Plaintiff's subject complaints at the time and were "completely at odds" with the description of symptoms Plaintiff provided to Dr. Marinos and reported by her in the Adult Function Report. Id. at 30, 182-88.

Second, the ALJ determined that Dr. Diebel's overall assessment was inconsistent with the results of his examination. Id. at 30. In particular, Dr. Diebel's observations that Plaintiff is not preoccupied with internal stimuli, is of average intelligence, does not present with gross impairments to memory, and has fair insight and judgment each undermine the ultimate conclusion that Plaintiff suffers from a disabling learning disability or mental impairment. Id. The Global Assessment Functioning ("GAF")[3] score assigned to Plaintiff by Dr. Diebel was not supported by his findings. Id. In addition, Dr. Diebel's opinion that Plaintiff would have one or two episodes of decompensation was not reflected by Plaintiff's reporting. Id. at 31. For these reasons, the ALJ believed Dr. Diebel "appeared to be acting as an advocate for his new patent contrary to the objective evidence." Id.

Third, Dr. Diebel had only been treating Plaintiff for a short period, and Plaintiff had not sought psychiatric treatment previously. Id. at 31. Indeed, at the time of the hearing, Dr. Diebel had only seen Plaintiff three times and was only willing to apply his opinion concerning her impairment to that time period. Id. at 31, 351-59. Based on that, the ALJ found that Dr. Diebel's assessment would not meet the regulatory durational requirement. Id. at 31.

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

10
CASE NO. 5:11-cv-06378 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On the record described above, it is apparent that the ALJ articulated "specific, legitimate" reasons for rejecting Dr. Diebel's opinions. Without a doubt, the ALJ considered the entirety of the medical evidence presented to find that Dr. Diebel's diagnoses were unreliable, superficial, internally inconsistent, and inconsistent with the record as a whole. The ALJ's explanation is thorough and based on other substantial evidence, including the reports of Dr. Acenas and Dr. Marinos, neither of whom diagnosed Plaintiff with depression or found that her learning disability prevented her from undertaking an appropriate level of work. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." (internal quotation marks omitted)); see also Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) (approving ALJ's rejection of medial report as self-contradictory). The ALJ's decision to give little or no weight to Dr. Diebel's report is therefore based on a reasonable interpretation of the record. Plaintiff's arguments to the contrary, which largely take issue with the lesser details of the ALJ's written decision, are unpersuasive.[4] To the extent Plaintiff invites an alternative interpretation of the medical evidence, this court cannot oblige. 42 U.S.C. § 405(g); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (an ALJ's factual findings must be upheld if supported by inferences reasonably drawn from the record and if evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision).

---

[4] The court is especially mindful of Plaintiff's argument that lack of treatment should not be used as the primary reason to reject complaints of mental disability. Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). Such an argument is misplaced here, however, because the ALJ provided several reasons, in addition to lack of treatment, to reject Dr. Diebel's diagnosis of depression. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005).

### 3. The ALJ properly assessed Plaintiff's credibility

Plaintiff challenges the ALJ's credibility finding. In the written decision, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were not credible due to the lack of subjective complaints, the absence of medically determinable impairments or corroborating clinical findings, the lack of longitudinal treatment records or records that show more than conservative treatment, and Plaintiff's inconsistent descriptions of her daily activities. See Tr. at 33-34.

An ALJ's credibility assessment is entitled to "great weight." See Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). If the record contains evidence of malingering, the ALJ may reject a claimant's testimony by making a credibility determination stating why the testimony is unpersuasive. See Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003) ("The ALJ could . . . reject [claimant's] testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

Here, the record contains evidence of malingering, mainly in the form of Dr. Marinos' report, which the ALJ found was entitled to significant weight. See Tr. at 29. In light of that evidence, the ALJ properly explained why Plaintiff's testimony was unpersuasive by appropriately citing the medical evidence as well as Plaintiff's inconsistent reports concerning the extent of her impairment. Id. at 32-34. The ALJ's adverse credibility finding is therefore supported by substantial evidence.[5]

---

[5] Plaintiff argues her "confused responses," or inconsistent reporting, should not be considered in assessing her credibility due to her low IQ. This argument is misplaced, however, because the ALJ did not find that Plaintiff's responses were at all "confused." In fact, the ALJ determined that Plaintiff "demonstrated sufficient intelligence, memory, and concentration to case doubt upon the credibility of her testimony. See Tr. at 34. This court cannot second-guess the ALJ's reasoning in the way Plaintiff requests. Moreover, the court will not consider the additional the evidence submitted with Plaintiff's reply brief or order a remand for the ALJ to consider it because Plaintiff's failure to raise it before the ALJ is unexplained. See 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. . . . The court may . . . remand the case . . . and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the

CASE NO. 5:11-cv-06378 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment (Docket Item No. 13) is DENIED and Defendant's Motion for Summary Judgment (Docket Item No. 16) is GRANTED.

**IT IS SO ORDERED.**

Dated: March 26, 2013



EDWARD J. DAVILA
United States District Judge

---

failure to incorporate such evidence into the record in a prior proceeding.").

13

CASE NO. 5:11-cv-06378 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California